IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CHERYLE CLUNES,                          )
                                         )
                 Plaintiff,              )      TC-MD 120255C
                                         )
        v.                               )
                                         )
CLACKAMAS COUNTY ASSESSOR,               )
                                         )
                 Defendant.              )      **DECISION**

Plaintiff appeals the real market value (RMV) of property identified as Account

01415828 (subject property) for the 2011-12 tax year.  Trial for the matter was held on

September 25, 2012, by telephone.  Steven Anderson (Anderson), an Oregon licensed real estate

broker, appeared on behalf of Plaintiff.[1]  Todd Cooper (Cooper) appeared on behalf of

Defendant.  Plaintiff's Exhibits 1 through 8 and Defendant's Exhibits A and B were admitted

without objection.

## I.  STATEMENT OF FACTS

The appeal involves the RMV of a single-family residential home for the 2011-12 tax

year. The RMV on the assessment and tax rolls, as reduced by the Clackamas County Board of

Property Tax Appeals (BOPTA), is $398,000.  The assessment date is January 1, 2011.

ORS 308.007; ORS 308.210.[2]

The subject property is a 3,794 square-foot, two-story, three-level home built in 1990 and

situated on a 9,265 square-foot lot in Clackamas, Oregon.  (Def's Ex A at 4.)  The home has

three bedrooms, two full bathrooms, and two half bathrooms.  (*Id.*)  There is also a four or five

car attached garage.  (*Id.*)  Exterior amenities include a 50 year comp roof, lap siding with brick

---

[1] Plaintiff's Authorization to Represent.  (Ptf's Compl at 2.)

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to
2009.

accents, a wood deck, and full landscaping. (*Id.*) Interior amenities include hardwood and carpeted floors, granite kitchen counters, brick fireplaces, and high-end appliances. (*Id.*) The subject property enjoys views of both Mount Hood and the valley to the east of the home. (*Id.*)

Defendant set the RMV at $459,832, with $115,442 allocated to the land and $344,090 to the structures (i.e., the home and other real property improvements). (Ptf's Compl at 3.) The maximum assessed value (MAV) is $451,653, as is the assessed value (AV). (*Id.*) Plaintiff successfully appealed to the Clackamas County Board of Property Tax Appeals (Board) and the Board reduced the RMV of the structures to $282,558, for a total RMV of $398,000. (*Id.*) Because that member is less than the property's MAV, the AV was reduced to $398,000, pursuant to ORS 308.146(2). (*Id.*)

A.    *Plaintiff's value evidence*

Plaintiff's presentation was very brief, consisting of a summary overview of Anderson's comparable sales approach and his valuation grid. (Ptf's Ex 3 at 3.) On cross examination, Anderson described the grid as a "price opinion" based on 24 years of market experience, including four years as a BOPTA board member and 22.5 hours of training from the Oregon Department of Revenue.

Plaintiff presented three comparable sales, two of which occurred prior to the assessment date and the third, 11 months after the assessment date.[3] (Ptf's Ex 3 at 3) Comparable one sold on November 15, 2011, at an unadjusted sale price of $305,000; comparable two sold on March 26, 2010, at an unadjusted sale price of $375,000; comparable three sold on June 29, 2011, at an unadjusted sale price of $394,000. (*Id.*)

Anderson adjusted for differences in exterior, number of fireplaces, square footage (of both the home and the garage), quality, and time. (*Id.*) For example, Anderson made a $20,000

---

[3] Defendant also used these same comparables in its valuation grid.

negative adjustment to comparable one for its new kitchen, testifying that he felt it was superior to that of the subject property. (*See id.*) Defendant took exception to the $20,000 adjustment, noting that there is insufficient detail of the nature and extent of the kitchen remodel in comparable one and that the subject property itself had an upscale kitchen.

Anderson's valuation grid sheet shows adjusted sale prices of comparables one through three of $333,650, $356,525, and $344,750, respectively. (*Id.*) However, Andersen acknowledged on cross-examination that he made adjustment errors for the basements of comparables one and two, adjusting them up $35 per square-foot whereas the adjustment should have been a downward adjustment of $16,100 each. He also acknowledged that he made a time adjustment error with respect to comparable one; the net effect of that mistake resulted in a $33,550 increase to its sale price. Anderson's final, trial adjusted sale prices for comparables one through three are $383,300, $372,625, and $344,750, respectively. Anderson testified that he gave most weight to comparable three, although he considers it superior to the subject property. Plaintiff's Complaint requests a reduction in RMV to $300,000. At trial, Anderson modified Plaintiff's request, seeking an RMV of $350,000.

B.    *Defendant's value evidence*

Cooper's presentation focused on the sales comparison approach and, like Plaintiff, presented a valuation grid (titled "Comparable Sales Grid"). (Def's Ex A at 5.) Cooper gave little weight to the cost approach because the "home was over 20 years old as of the assessment date";[4] the income approach was considered but Copper concluded that it was not "a credible indicator of market value * * *." (*Id.* at 16.)

///

---

[4] Cooper concluded that "[t]he cost approach indicates a value for the subject property of $399,012 " as of the assessment date. (Def's Ex A at 16.)

Cooper's valuation grid shows six comparable sales with the following information: comparable one (which is also Plaintiff's comparable three) sold on June 24, 2010, at an unadjusted sale price of $390,000; comparable two sold on February 23, 2011, at an unadjusted sale price of $317,000; comparable three sold on November 12, 2010, at an unadjusted sale price of $300,000; comparable four sold on November 15, 2011, at an unadjusted sale price of $305,000; comparable five sold on June 18, 2010, at an unadjusted sale price of $390,000; comparable six sold on March 26, 2010, at an unadjusted sales price of $375,000. (*Id.* at 5.)

Cooper made adjustments for time, overall quality, size (for square footage differences above grade, in basement space, and in garage size), bathrooms, view, and heating/cooling source. (*Id.*) For example, because comparables two, three, and six lacked an appealing view, their sale prices were adjusted upward $32,300 each, a "market derived" adjustment. (*Id.*) Also, the sale prices of comparables one and six were adjusted downward $33,100 each because of their superior quality; comparables three and four have inferior quality, and their sales prices were adjusted upward $33,100 each. (*Id.* at 9.) Cooper admitted on cross examination that he did not make time adjustments accurate to the day, stating that such adjustments would result in only minor changes to his adjusted sale prices. Cooper stated that all "adjustments were derived from the market using paired sales analysis and extraction techniques and are supported by the local RMLS statistics, local cost guides, [Defendant's] personal data banks[,] and [Defendant's] conversations with professionals * * *." (*Id.* at 8.)

Each party used Plaintiff's three comparable sales in their value estimates. During Defendant's presentation, Cooper criticized Anderson's adjustments and calculated corrected adjusted sales prices. As for Plaintiff's comparable one, Cooper pointed out the time, basement, and kitchen adjustments already discussed above. Correcting for these, Cooper stated that the adjusted sales price for Plaintiff's comparable one should be $403,000. Correcting for age and

view, Cooper stated that the adjusted sales price for Plaintiff's comparable two should be $416,175. Correcting for basement square footage, Cooper stated that the adjusted sales price for Plaintiff's comparable three should be $378,750. Anderson criticized Defendant's time adjustments as not accurate to the day, calculating corrected adjusted sales prices of $382,400, $393,170, $397,400, no change, $405,693, and $374,025, respectively.

Cooper gave the most weight to his comparables one, five, and six, as they had the lowest overall net adjustments. (*Id.* at 10.) His adjusted sale prices for those comparables are $384,300, $406,800, and $385,300, respectively. (*Id.* at 5.) Upon reconciliation, Cooper estimates a value for the subject property of $390,000 as of the assessment date. (*Id.* at 16.)

## II. ANALYSIS

"Real market value is the standard used throughout the ad valorem statues except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (March 26, 2003) (citing *Gangle v. Dept. Of Rev.* 13 OTR 343, 345.) Real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232. Real market value is defined by statute as:

> "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1).

The Department of Revenue has adopted methods and procedures for determining RMV. ORS 308.205(2); OAR 150-308.205-(A). Per administrative rule, there are three approaches to valuation: the sales comparison approach, the cost approach, and the income approach. OAR 105-308.205-(A)(2)(a); *see also* Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). In some cases, one or more approaches may not be useful; however, all three

approaches must be considered. *Id.* Ultimately, the approach to be used is a question of fact to be determined by the court upon the record. *Pacific Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979).

In the present case, the parties relied primarily on the sales comparison approach. "In utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions." OAR 150-308.205-(A)(2)(c).

The court agrees that the sales comparison approach is the most appropriate. However, the court concludes that Plaintiff's comparable sales were not adequately adjusted to be comparable. Overall, the court was not impressed with the quality and character of Anderson's valuation evidence. For example, Anderson testified that he made a $45,000 "quality" (class) adjustment for every class point difference between his comparables and the subject.[5] (*see also* Ptf's Ex 3 at 3.) When questioned by the court, Anderson stated that he felt he was being conservative, because when he served on the board, they used $50,000 for each point difference in class. He also failed to adjust for view differences because he testified that the county value data (ProVal) did not include a separate line item for view. Nor did Anderson adjust for time even though two of his three sales (comparables two and three respectively) sold nine months and six months before the applicable assessment date. (*Id.*)

As the party seeking affirmative relief, Plaintiff bears the burden of proof. ORS 305.427. To succeed in this appeal, Plaintiff "must affirmatively prove that the RMV figure * * * [she] has

---

[5] Anderson apparently concluded that his comparables one and three were inferior and therefore made $45,000 upward adjustments to those two sales. (Ptf's Ex 3 at 3.) Anderson applied a $15,000 negative adjustment to his comparable two. (*Id.*) Assuming $45,000 was the adjustment for a full one point difference between property classes, Anderson apparently determined that his comparable two differed from the subject by only a third of a point, although the testimony and documentary evidence is unclear on the matter.

requested for the subject property is more likely than not the value of the property." *Yarbrough v. Dept. of Rev.* (*Yarbrough*) TC No 5075 (Sept 18, 2012). Plaintiff must establish her requested RMV "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (Jul 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and competent testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Yarbrough*, TC No 5075. If the evidence presented is inconclusive or unpersuasive, it is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

Plaintiff's valuation evidence is unpersuasive. Anderson did not present an appraisal or testimony from licensed professionals. Rather, Anderson supported the requested RMV reduction with a "price opinion." Anderson testified his opinions therein were based on his years of "market experience," plus his experience as a BOPTA member, and his 22.5 hours of instruction with the Department of Revenue. Even so, Anderson failed to make accurate adjustments for basement size and time, he failed to make any adjustment for view, and his quality adjustments did not appear market based. The court finds that Anderson's "price opinion" and accompanying testimony are not competent evidence of the subject property's RMV for the 2011-12 tax year. This court has previously observed the "[p]ersonal conclusions [of appraisers] with no basis in actual market data are entitled to little or no weight." *McKee v. Dept. of Rev.*, 18 OTR 58, 64 (2004). The same holds true for others valuing property.

/ / /

Even though Plaintiff's burden has not shifted, the court has "jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. The court concludes that Defendant's evidence supports the subject property's BOPTA-reduced value of $398,000 for the 2011-12 tax year.

## III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff has not met her burden of proof with respect to the requested reduction in the subject property's 2011-12 real market value. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of November 2012.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on November 14, 2012. The Court filed and entered this document on November 14, 2012.*